**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DERRICK ROLLINS, # R61885,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 25-cv-02138-SMY** |
| | ) | |
| **JOHN DOE (C/O, Tact Team), and** | ) | |
| **C/O HUBER (Graham CC),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, Chief Judge:**

Plaintiff Derrick Rollins, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.  He claims he was subjected to an unconstitutional strip search, retaliation, and deliberate indifference to his mental health needs. He seeks monetary damages.  (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.  28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1):  Plaintiff was subjected to a search/shakedown on September 6, 2024 conducted by Defendant C/O John Doe of the Tactical Team (Doc. 1, p. 5).  C/O Doe ordered Plaintiff to remove all his clothes, bend over, and

1

spread his buttocks.  He then demanded Plaintiff face him, lift his penis with one hand and separate his testicles with the other hand.  Plaintiff complied.  After that, C/O Doe ordered Plaintiff to place his fingers in his mouth.  Plaintiff did so and the taste of feces and odor from his soiled fingers caused his stomach to cramp.  Doe said, "It was good to see [Plaintiff] again." (Doc. 1, p. 5).  C/O Doe knew the water to Plaintiff's cell had been cut off and he had no way to wash himself after touching his private parts.  Plaintiff asked C/O Doe for his name, but he covered his name tag and walked away.  The response to Plaintiff's grievance states this shakedown occurred in Menard's N-2 Restrictive Housing unit (Doc. 1, p. 12).

Defendant C/O Huber[1] witnessed the unsanitary search which violated strip-search procedure (Doc. 1, p. 6).  During the search, Huber told Plaintiff, "You tasted yourself huh." "That's get back for my brother and all the bullshit you done in Graham [sic]."  *Id.*  After the search, while Plaintiff was facing the wall, Huber told C/O Doe, "Thank you cause he's a axxhole all he does is write grievances and try to assault our officers [sic]."  *Id.*  Doe responded, "No problem, brother."  *Id.*  Huber was referring to a situation between Plaintiff and C/O Vick at Graham, which was the reason Plaintiff is in Menard (Doc. 1, p. 13).  The strip search was recorded on camera (Doc. 1, pp. 10, 12).

During the unsanitary search, Plaintiff asked C/O Doe for a mental health crisis team because the incident left him humiliated and violated (Doc. 1, p. 6).  C/O Doe ignored the request. Plaintiff repeated his crisis team request to Huber and Doe after Huber's remarks, but both refused to call a crisis team.  If Plaintiff had refused to comply with Doe's orders or asked for help during the search, he would have been maced and beaten, as is the practice of Tact Team members during their shakedowns.

---

[1] Plaintiff describes C/O Huber as an employee at Graham Correctional Center, but his narrative places Huber at Menard during the events described in the Complaint (Doc. 1, pp. 2, 6).

2

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: Eighth Amendment cruel and unusual punishment claim against C/O John Doe for conducting the unsanitary and humiliating strip search of Plaintiff on September 6, 2024.

Count 2: First Amendment retaliation claim against C/O Huber and C/O John Doe for strip searching Plaintiff on September 6, 2024 in an unsanitary and humiliating manner because of Plaintiff's earlier grievance activity at Graham.

Count 3: Eighth Amendment deliberate indifference to serious mental health needs claim against C/O John Doe and C/O Huber for refusing Plaintiff's requests for a mental health crisis team following the September 6, 2024 strip search.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Count 1

A strip search that is not related to legitimate security needs or is conducted in a harassing manner to humiliate and inflict psychological pain may be found unconstitutional under the Eighth Amendment. Even if a valid penological reason existed for the search, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 719 F.3d 631, 634, (7th Cir. 2013); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (a strip search conducted in a harassing manner intended to humiliate and inflict psychological pain could violate the Eighth Amendment).

3

Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant John Doe based on the alleged September 6, 2024 strip search. However, Plaintiff must identify this individual by name before he can be served with notice of this action.

## Count 2

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). Huber's alleged statements and Doe's alleged responses support Plaintiff's claim that the strip search was conducted with the intent to retaliate against him for filing grievances at Graham. Count 2 will therefore proceed against both defendants.

## Count 3

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical or mental health needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts suggesting that (1) he suffered from an objectively serious mental health condition, and (2) the defendant acted with deliberate indifference to his mental health needs. *Id.* Plaintiff alleges he suffered mental distress resulting from Doe's strip search, and that Doe and Huber refused his request to summon a mental health crisis team. These allegations are sufficient to state a viable deliberate indifference claim. Therefore, Count 3 may proceed against C/O John Doe and C/O Huber.

4

**Unknown/John Doe Defendant**

Plaintiff is responsible for securing information aimed at identifying the Unknown/John Doe Defendant, in accordance with the John/Jane Doe Identification Order that will be entered separately.  Once the name of the unknown defendant is obtained, Plaintiff must file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.  The Warden of Menard Correctional Center, in his/her official capacity only, will be added as a defendant for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown Defendant.

**Disposition**

The Complaint states colorable claims in Count 1 against C/O John Doe, and in Counts 2 and 3 against C/O John Doe and C/O Huber.  The Clerk of Court is **DIRECTED** to **ADD** the Warden of Menard Correctional Center, in his or her official capacity, to the docket for the purpose of identification of the John Doe Defendant.

The Clerk shall prepare for C/O Huber and the Warden of Menard Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer

shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.  The Menard Warden need only appear in this matter and need not answer the Complaint.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  July 20, 2026**

_____
**STACI M. YANDLE**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.